IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 02-cv-01116-LTB-CBS

STEPHEN C. ROTH; and
JEAN E. GUMESON,
          Plaintiffs,

v.

MICHAEL F. GREEN, as an individual and in his official capacity,
DENNIS SPRUELL, as an individual and in his official capacity,
MATT BURFFINGTON, as an individual and in his official capacity,
BROOKS BENNETT, as an individual and in his official capacity,
HIGH RICHARDS, as an individual and in his official capacity,
DANNY DUFUR, as an individual and in his official capacity,
JEFF COLEMAN, as an individual and in his official capacity,
TIM ROWELL, as an individual and in his official capacity,
TOM HALPER, as an individual and in his official capacity,
MICKE, MEUER, a/k/a MIKE MEUEER, as an individual and in his official capacity,
KEN BRACKETT, as an individual and in his official capacity,
SAM HAGER, as an individual and in his official capacity,
ROY C. LANE, as an individual and in his official capacity,
JERRY MARTIN, as an individual and in his official capacity,
JOEY M. CHAVEZ, as an individual and in his official capacity,
AL BELL, as an individual and in his official capacity,
SUDMEU "DUKE" SHIRARD, as an individual and in his official capacity,
DALE WOOD, as an individual and in his official capacity,
CITY OF CORTEZ, a public corporation,
CITY OF DURANGO, a public corporation,
DOLORES COUNTY BOARD OF COUNTY COMMISSIONERS, a public corporation,
LA PLATA COUNTY BOARD OF COUNTY COMMISSIONERS, a public corporation,
MONTEZUMA COUNTY BOARD OF COUNTY COMMISSIONERS, a public corporation,
JOHN DOES 1-50,
          Defendants.

---

## RECOMMENDATION REGARDING MOTIONS FOR SANCTIONS

---

Magistrate Judge Craig B. Shaffer

THIS MATTER comes before the court on separate motions for sanctions filed by the

Cortez Defendants (comprised of the City of Cortez, Dennis Spruell, Danny Dufur and Roy C.

Lane) (doc. # 124), the Durango Defendants (the City of Durango, Al Bell and Jeff Copeland)

(doc. # 126), and the Buffington Defendants (Matt Buffington, Tim Rowell, Tom Halper, Mike

Meuer, Sheriff Sydney Shirard, Sheriff Jerry Martin, and the Boards of County Commissioners

for the Counties of Delores and Laplata) (doc. # 131).[1]  Each of these motions seeks an award of

attorneys fees and costs against Robert J. Mulhern pursuant to 28 U.S.C. § 1927.  The Cortez

Defendants also seek sanctions against Plaintiffs Stephen Roth and Jean Gumeson.  With a

Memorandum (doc. # 247) dated October 16, 2007, the district court directed this magistrate

judge to prepare a report and recommendation, containing findings of fact and conclusions of

law, with respect to the pending motions for sanctions against Mr. Mulhern, and Plaintiffs Roth

and Gumeson's abilities to pay sanctions under 42 U.S.C. § 1988 pursuant to the Tenth Circuit's

Mandate and Order of Remand, filed November 22, 2006 (doc. # 215).  The court has carefully

reviewed the parties' briefs, the entire case file and the applicable case law.  I have also reviewed

the transcript of proceedings held on October 16, 2007.

## FACTUAL BACKGROUND

On June 15, 2000, Stephen Roth and Jean Gumeson were arrested by law enforcement

officers associated with the Twenty-Second Judicial Drug Task Force which had set up a "ruse"

checkpoint on Highway 145 in Dolores County, Colorado.[2]  While no checkpoint was actually

established, signs placed along the highway stated that a narcotics checkpoint utilizing a drug

dog was being conducted on the road ahead.  At approximately 4:30 pm, Hugh Richards, a

---

[1]The Cortez, Durango and Buffington Defendants are collectively described herein as the "Moving Defendants."

[2]The salients facts surrounding these arrests are set forth in the Tenth Circuit's opinion in *Roth v. Green*, 466 F.3d 1179, 1183 (10th Cir. 2006), *cert. denied*, 128 S.Ct. 69 (2007).

deputy assigned to the Montezuma County Sheriff's Department, observed a female passenger in

a blue Toyota throw an object from that vehicle.  Deputy Richards radioed this information to

other officers and the blue Toyota, driven by Mr. Roth, was stopped for littering by Dennis

Spruell, an officer with the Cortez, Colorado Police Department.  Deputy Richards then retrieved

the object he believed had been thrown from the Toyota, which turned out to be a wooden pipe

with burnt residue smelling like marijuana.  Although Mr. Roth insisted that his passenger, Ms.

Gumeson, had thrown a pop can from the car, he declined to consent to the search of his vehicle.

Officer Spruell announced that he had reasonable suspicion to believe that further evidence of

contraband would be found in the Toyota.  Officer Spruell and Officer Jeff Copeland,[3] of the

Durango Police Department, searched Mr. Roth's car and found a wooden marijuana pipe with

burnt residue under the front driver's seat and plastic baggies containing psilocybin mushrooms,

a Schedule I controlled substance, in a cooler located in the back seat.  On December 11, 2001,

Mr. Roth was found guilty at trial of possession of drug paraphernalia and fined $100.  Ms.

Gumeson pled guilty to littering.  Mr. Roth appealed his conviction, arguing that the evidence

taken from his vehicle had been illegally obtained as the fruit of an unconstitutional checkpoint.

Mr. Roth's conviction was affirmed by the Colorado Court of Appeals on August 14, 2003.

On June 12, 2002, Plaintiffs Roth and Gumeson, through their counsel Mr. Mulhern, filed

their Complaint against 26 named defendants pursuant to 42 U.S.C. § 1983, challenging the

constitutionality of the Task Force checkpoint, as well Plaintiffs' subsequent stop, search and

---

[3]It appears that Plaintiffs' Complaint incorrectly identified Officer Copeland as "Jeff Coleman."  Although the Durango Defendants corrected this mis-identification in their Reply in Support of Motion to Dismiss (doc. #105), filed on April 23, 2003, the Tenth Circuit's decision continued the mistaken reference to Defendant "Coleman."

arrest.  Defendants moved to dismiss the Complaint and/or for summary judgment, in separate

motions filed on September 10, 2002 (doc. ##15, 16, and 18).  The Moving Defendants argued,

in part, that Plaintiffs' Complaint should be dismissed for failure to state a claim for relief and

for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.  Defendants further

argued that Plaintiffs' claims were not cognizable under *Heck v. Humphrey*, 512 U.S. 477

(1994), and bared by the doctrine of qualified immunity.  Although Plaintiffs moved (doc. # 46)

to stay this action on September 18, 2002, that motion was denied on September 24, 2002.

In January 2003, various defendants moved to supplement their dispositive motions by

incorporating the Tenth Circuit's decision in *United States v. Flynn*, 309 F.3d 736 (10th Cir.

2002).  *See, e.g.,* the Buffington Defendants' Motion to Adopt Montezuma County Defendants'

Citation of Additional Authority (doc. # 70) filed on January 31, 2003.  Citing the "virtually

identical" facts in *Flynn*, the Moving Defendants argued that *Flynn* conclusively established that

"the activities in question did not 'constitute illegal police activity.'"  *See* Montezuma County

Defendants' Citation of Additional Authority (doc. # 65), filed on January 16, 2003.

On February 5, 2003, counsel for the Cortez Defendants sent a letter to Mr. Mulhern

insisting that *Flynn* "is not only dispositive of the issues pending in this matter, but it also

defines the current state of the law regarding ruse checkpoints like the one at issue in this case."

*See* Exhibit 1 attached to the Cortez Defendants' Motion for Sanctions Against Robert J.

Mulhern (doc. # 124), filed on December 24, 2003.  In the same letter, defense counsel took the

position that "in light of the *Flynn* decision . . . continued maintenance of this case is frivolous

and groundless."  Similar letters were sent by counsel for the Durango Defendants on February

3, 2003 and the Buffington Defendants on September 15, 2003.  *See* Exhibit A attached to the

Durango Defendants Motion for Sanctions Against Robert J. Mulhern (doc. # 126), and the letter

appended to the Buffington Defendants' Motion for Sanctions Against Robert J. Mulhern (doc. #

131).

Plaintiffs filed a combined Response to All of the Defendants' Motions to Dismiss or

Summary Judgment Motions (doc. # 94) on March 13 2003. Plaintiffs addressed the

implications of the *Flynn* decision near the end of their brief, arguing that the Tenth Circuit's

decision was not controlling authority "because the *Flynn* case relied on" Supreme Court dictum

and because the facts in *Flynn* were distinguishable.

On December 5, 2003, the district court granted the defendants' motions and dismissed

the action in its entirety (doc. # 121). In its Order, the district court concluded that Plaintiff

Roth's claims were barred by the *Rooker-Feldman* doctrine and by collateral estoppel. Judge

Babcock further held that Plaintiffs had failed to state a claim for relief under *Heck v. Humphrey*.

Finally, the district court found that the defendants were entitled to summary judgment as the

facts in this case were virtually identical to those in *Flynn*. In holding that *Flynn* was

dispositive, Judge Babcock quoted at length from that Tenth Circuit decision:

> Mr. Flynn never reached a drug checkpoint. He discarded the property prior to
> being stopped by the police. Up to that moment, he acted voluntarily in response
> to a ruse established by the police (*i.e.*, the signs warning of a fictitious
> checkpoint on I-40). The posting of signs to create a ruse does not constitute
> illegal police activity. In fact, had Mr. Flynn continued driving eastbound on I-
> 40, he would never have been stopped because the checkpoint warned of by the
> signs did not exist. Even the police car ahead on I-40 was unoccupied. The
> officers put up the signs only as a ruse to observe suspicious behavior by those
> who might take the nearest exit after seeing the signs.
>
> Mr. Flynn claims the officers waiting in a car on Ross Road, under the I-40
> overpass, were operating an illegal drug checkpoint. The legality (or even the
> existence) of a checkpoint on Ross Road, however, is irrelevant, as other officers
> stopped Mr. Flynn before he turned on Ross Road. The creation of a ruse to

5

> cause the defendant to abandon an item is not illegal.  Here the defendant
> abandoned the property before being stopped by the police.  He retained no
> reasonable expectation of privacy in the object.  The abandonment in this
> situation was voluntary.

The district court entered judgment in favor of all defendants on December 11, 2003 (doc.

# 122).

Thereafter, the Moving Defendants filed separate motions for sanctions against Plaintiffs'

counsel, Robert J. Mulhern, pursuant to 28 U.S.C. § 1927.[4]  For example, the Durango

Defendants argued that Plaintiffs' counsel brought "suit against multiple individuals and entities

who had no connection to the events in questions" which

> resulted in an extraordinary waste of time and expense.  Defendants who clearly
> had no liability under the circumstances were forced to obtain counsel and defend
> against specious claims.  Mr. Mulhern's refusal to withdraw claims or dismiss
> defendants against whom those claims could not be maintained was vexatious and
> he should be required to satisfy the excess costs and attorney's fees incurred by
> these defendants.

See Durango Defendants' Motion for Sanctions (doc. # 126), at 5-6.  Similar arguments were

advanced by the Cortez Defendants and the Buffington Defendants.  See Cortez Defendants'

Motion for Sanctions (doc. # 124), at 4-5, and the Buffington Defendants' Motion for Sanctions

(doc. # 131).  The Cortez Defendants requested fees and costs totaling $13,4236.31.  The

Durango Defendants' Motion for Sanctions sought reimbursement for fees and costs of

$15,752.54.  The Buffington Defendants claimed $17,509.50 for attorneys fees and costs.[5]

---

[4]Defendants' motions also sought sanctions under Fed. R. Civ. P. 11.  In view of the
Tenth Circuit's decision, Roth v. Green, 466 F.3d at 1193, sanctions under that alternative theory
are no longer at issue.

[5]It should be noted that motions for sanctions against Mr. Mulhern also were filed by the
"Montezuma County Defendants" (doc. # 123), the "State Defendants" (doc. # 127) and the
"Town of Mountain Village Defendants" (doc. # 137).  The "Town of Mountain Village

Mr. Mulhern responded to these motions for sanctions with a combined Response on January 14, 2004.  *See* Response to All of the Defendants' Motions for an Order for Sanctions and/or Attorneys' Fees and Costs (doc. # 138).  Plaintiff's counsel insisted that he had not acted unreasonably or to harass the defendants, but only filed the Complaint because the statute of limitations was about to run.  Mr. Mulhern also argued that he had specifically moved to stay proceedings in order "to try to keep attorneys' fees and costs down."  Finally, Mr. Mulhern insisted that as a public interest attorney with minimal income, any award of attorneys fees and costs might have the effect of taking away his livelihood.

The district court entered an Order (doc. # 171) on June 15, 2004, granting Defendants' motions to sanctions.  The Tenth Circuit succinctly summarized Judge Babcock's ruling:

> "In suing twenty-six named Defendants and Does 1-50," the district court
> concluded, "Mulhern engaged in shotgun litigation, and ignored the realities of
> the Defendants' non-involvement in the circumstances applicable to his clients."
> In other words, the district court concluded, "Mulhern unreasonably and
> vexatiously multiplied the Defendants in this case, thereby recklessly increasing
> the amount of attorney and paralegal time spent on litigation, and the costs
> associated therewith."  The district court also noted that "[d]efendants who clearly
> had no liability under the circumstances were forced to obtain counsel and defend
> against specious claims," and that "Mulhern refused to withdraw claims or
> dismiss various Defendants against whom claims could not be maintained."

*See Roth v. Green*, 466 F.3d at 1186.  Judge Babcock awarded the Buffington Defendants fees and costs totaling $17,509.50, the Durango Defendants fees and costs of $15,752.54, and the Cortez Defendants fees and costs of $13,436.31.

―――――――――――――――――

Defendants" withdrew their motion for § 1927 sanctions on February 13, 2007 (doc. # 226).  The "State Defendants" disclaimed any further interest in the litigation with an unopposed motion (doc. # 244) filed on March 13, 2007.  The "Montezuma County Defendants" advised the court they were no longer seeking sanctions under § 1927 in a Statement (doc. # 262) filed on October 25, 2007.

On February 3, 2005, the Tenth Circuit affirmed the district court's dismissal of Plaintiffs' action.  In that same Order, the Tenth Circuit concluded that it lacked jurisdiction to consider an appeal of the district court's imposition of sanctions against Mr. Mulhern because the district court had not entered an order determining the full amount of those sanctions.  *See Roth v. Green*, 123 Fed. Appx. 871 (10th Cir. 2005).

On March 28, 2005, the Tenth Circuit awarded $363.20 in costs under Fed. R. App. R. 39.  The appellate court also awarded, pursuant to 42 U.S.C. § 1988, "defendants attorney's fees on appeal, in an amount to be determined by the district court on remand."  *See Roth v. Green*, 466 F.3d at 1187.  Thereafter, on April 11, 2005, the Cortez Defendants moved (doc. # 194) for an award of fees and costs pursuant to Fed. R. App. P. 38 and 28 U.S.C. § 1912.  On May 12, 2005, the district court entered an order directing Roth and Gumeson to pay attorneys fees in the amount of $12,049.  Responding to Plaintiffs' claims of impecuniosity, the district court concluded that "such consideration may be a factor when determining whether to award fees – which has already been determined by the Tenth Circuit – not when assessing the proper amount of the award, which is my charge here on remand."  *See* Order of May 12, 2005 (doc. # 202).

In a published decision dated October 30, 2006, the Tenth Circuit held that the district court did not abuse its discretion in concluding that Mr. Mulhern violated the provisions of 28 U.S.C. § 1927 by filing and pursuing claims on behalf of Plaintiffs Roth and Gumeson.  *See Roth v. Green*, 466 F.3d at 1184.[6]  The Tenth Circuit remanded this case to the district court to

---

[6]The binding effect of that decision is not at issue.  *See, e.g., Bishop v. City of Henderson*, 81 Fed. Appx. 232 (9th Cir. 2003) (holding that plaintiff's challenge to the propriety of sanctions was foreclosed by the law of the case based upon the appellate court's prior finding that an award of sanctions was proper); *In re Blagg*, 271 B.R. 213 (B.A.P. 10th Cir. 2001) (where an earlier appellate decision constituted the law of the case with respect to the imposition of

determine, in part, "the proper amount of fees and costs to be assessed under § 1927 (i.e., 'the excess costs . . . and attorneys' fees reasonably incurred because of' his unreasonable and vexatious conduct)." *Id.* at 1193.  The Tenth Circuit also remanded for further proceedings on the issue of attorneys fees under § 1988 and Plaintiffs' ability to pay whatever amount might be assessed against them by the district court.

On February 9, 2007, the Cortez Defendants filed a Supplemental Brief in Support of Motion for Sanctions Against Robert J. Mulhern Pursuant to 28 U.S.C. § 1927 (doc. # 22), in which they requested $13,535.15 for fees and costs incurred from July 22, 2002 until the time of dismissal or, alternatively, $7,238.93 for fees and costs incurred from February 3, 2003 to the time of dismissal.  On March 2, 2007, the Durango Defendants filed a Supplemental Brief in Support of Motion for Sanctions Against Robert J. Mulhern Pursuant to 28 U.S.C. § 1927 (doc. # 233).  An affidavit attached to the Durango Defendants' Supplemental Brief claimed a total of $13,690.00 in attorneys fees and $2,062.54 in costs or, alternatively, $7,218.50 in fees and $1647.34 for costs incurred from February 3, 2003 through December 11, 2003.  On March 5, 2007, the Buffington Defendants filed a Supplemental Brief in Support of Motion for Sanctions Against Robert J. Mulhern Pursuant to 8 U.S.C. § 1927 (doc. # 241).  In that filing, the Buffington Defendants claimed $20,358.50 in attorneys fees and $1,727.41 in costs incurred from the commencement of the action through dismissal on December 5, 2003.

Mr. Mulhern, on behalf of his clients and himself, filed a Supplemental Response as to Sanctions Against Counsel and the Prevailing Party Award Against His Clients (doc. # 234) on

---

sanctions; further inquiries were limited to the reasonableness of the amount of sanctions awarded).

March 4, 2007.[7]  In addressing the award of sanctions under § 1927, Mr. Mulhern argued that an award of all excess fees and costs would be unreasonable and punitive given his inability to pay such an amount.  In support of this position, Mr. Mulhern provided his own affidavit in which he detailed his personal financial circumstances.  Counsel also provided affidavits from his clients, in which they set forth their monthly incomes and monthly expenses, as well as their lack of real property or substantial personal assets.  On March 10, 2007, Plaintiffs and their counsel filed a Second Supplemental Response Against Counsel and the Prevailing Party Award Against His Clients (doc. # 243).

## ANALYSIS

A.     *Sanctions Against Plaintiff's Counsel*

Section 1927 provides, in pertinent part, that any attorney "who so multiples the proceedings in any case unreasonably and vexatiously may be required to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  This statute "is indifferent to the equities of a dispute and to the values advanced by the substantive law.  It is only concerned with limiting the abuse of court processes."  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980).  In considering the propriety of § 1927 sanctions, the court "must focus 'on the conduct of the litigation and not on its merits.'"  *Salvin v. American National Insurance Co.*, 2008 WL 2369095, *2 (4th Cir. 2008).  As the Tenth Circuit recently noted, "the text of § 1927, unlike that of Rule 11, indicates a purpose to compensate victims of abusive litigation practices, not to deter and punish offenders."  *Hamilton*

---

[7]On October 15, 2007, Mr. Mulhern filed an Updated Affidavit Along With Exhibits (doc. # 257) in Support of the Supplemental Response as to Sanctions Against Counsel and the Prevailing Party Award Against His Clients (doc. # 257).

*v. Boise Cascade Express*, 519 F.3d 1197, 1205 (10th Cir. 2008).

To support an award of sanctions under § 1927, three conditions must be satisfied: (1) the conduct at issue must be unreasonable and vexatious; (2) that conduct must multiply the proceedings; and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct. *Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). For purposes of the instant Recommendation, the first two conditions are no longer at issue. The Tenth Circuit has already concluded that sanctions under § 1927 are warranted in this case.

> The district court noted, and we agree, that there were a host of legal impediments to Roth and Gumeson prevailing on their claims. To begin with, the majority of the defendants named in the complaint had, at best, only tangential relationships to the "ruse" checkpoint, and thus were not properly named as defendants in the complaint. For example, defendant Bill Owens, the Governor of the State of Colorado, was not alleged to have had any direct connection with, or participation in, the "ruse" checkpoint.

> Even with respect to the named defendants who directly participated in the "ruse" checkpoint, it is clear that the conduct was entirely legal. Although Mulhern continues to maintain that the claims asserted in the complaint were not controlled by our decision in *Flynn*, he is mistaken. . . .

> If there were any doubts about the legality of the ruse utilized by defendants in this case (and it appears that, even prior to *Flynn*, the legality of such a ruse was clear), those doubts should have ceased when we issued *Flynn*. Mulhern, in turn, upon receiving notice of the *Flynn* decision (and the record indicates he was repeatedly advised of the decision by the defendants in their respective letters), should have voluntarily dismissed the complaint. Stated differently, it was unreasonable, and a violation of his obligation as a licensed attorney, to continue to pursue the claims after the issuance of *Flynn*. Although Mulhern now argues that a reasonable basis exists for overruling the *Flynn* decision, he fails to offer any such basis.

> *   *   *

> In sum, the district court did not abuse its discretion in concluding that Mulhern violated the provisions of . . . [28 U.S.C.] § 1927 in filing and pursuing the § 1983 claims on behalf of Roth and Gumeson.

11

*Roth v. Green*, 466 F.3d at 1188-90 and 1193.

In his Supplemental Response, Mr. Mulhern argues that § 1927 sanctions are not warranted in this case because throughout the litigation he acted reasonably and in good faith, as measured by a subjective standard. *See* Supplemental Response as to Sanctions Against Counsel, at 4. Yet, even Mr. Mulhern concedes that this argument is contrary to the weight of settled precedent in the Tenth Circuit. *See, e.g., Hamilton v. Boise Cascade Express*, 519 F.3d at 1202 ("[a]lthough subjective good faith on the party of a non-attorney party appellant may in some instances excuse otherwise unreasonable conduct, we are entitle to demand that an attorney exhibit some judgment); *Mills v. UNUM Life Insurance Company of America*, 201 F.3d 448, *4 (10th Cir. 1999) (Table) (holding that § 1927 sanctions "are imposable against an attorney personally for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court"); *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) ("To excuse objectively unreasonable conduct by an attorney would be to state that one who acts 'with an empty head and a pure heart' is not responsible for the consequences").

Section 1927 does not permit the court to award as a sanction all fees and costs incurred in defending an action, but rather only those fees and costs attributable to particular proceedings found to be unreasonable or vexatious. *Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993). *But see Browning v. Kramer*, 931 F.2d 340 (5th Cir. 1991) (holding that under § 1927, the court may require reimbursement of all fees and costs where the entire course of proceedings was unwarranted and should never have been commenced). Because § 1927 authorizes sanctions when a party multiplies "the proceedings in any case," the initial pleadings filed by the parties should be excluded from any sanction award. *See Home Design Services, Inc. v. Chris Kendrick*

12

*Construction*, 2009 WL 1973503, *3 (D. Colo. 2009) (citing *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3rd Cir. 2008)).  As the Tenth Circuit concluded in *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006), § 1927 liability generally cannot be imposed simply for initiating meritless litigation.  However, sanctions under § 1927 are appropriate where counsel persists in recklessly pursuing claims in the face of a well-supported motion to dismiss.  *Id.* at 1225.  Section 1927 imposes a continuing duty on counsel to reevaluate the merits of their case and to dismiss claims that are no longer viable.  *Jolly Group, Ltd. v. Medline Industries, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).  *Cf. Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442, 452 (D. N.J. 2005) (holding that sanctions attach under § 1927 when counsel continues a suit, or some aspect of it, after learning that the suit lacks merit); *Rodriguez v. Banco Cent.*, 155 F.R.D. 403, 407 (D.P.R. 1994) ("there is a point beyond which zeal becomes vexation, the 'novel' approach to a legal issue converts to frivolity and steadfast adherence to a position transforms to obdurateness").

The precise point when proceedings become "unreasonable or vexatious" will depend upon the facts or circumstances attendant upon a particular party in a specific case.  For example, one of the Cortez Defendants (Officer Spruell)) and one of the Durango Defendants (Officer Copeland) directly participated in the "ruse" checkpoint and the search of Mr. Roth's vehicle.  In alluding to the named defendants who directly participated in the checkpoint, the Tenth Circuit concluded

> If there were any doubts as to the legality of the ruse utilized by defendants in this case (and it appears that, even prior to *Flynn*, the legality of such a ruse was clear), those doubts should have ceased when we issued *Flynn*. . . . Stated differently, it was unreasonable, and a violation of [Mr. Mulhern's] obligations as a licensed attorney, to continue to pursue the claims after the issuance of *Flynn*.

*See Roth v. Green*, 466 F.3d at 1189.  The Durango Defendants gave Mr. Mulhern notice of the *Flynn* decision with a letter dated February 3, 2003.  I conclude, consistent with the Tenth Circuit's analysis, that fees and costs incurred by the Cortez and Durango Defendants after February 3, 2003 were attributable to Mr. Mulhern's obdurate adherence to a legal theory that was no longer tenable.  *Cf. Ratliff v. Stewart*, 508 F.3d 225, 235-36 (5th Cir. 2007) (holding that defendant was only entitled to those fees and costs incurred after plaintiff's counsel was put on notice of his error).

The Buffington Defendants, however, are positioned differently.  In their Motion to Dismiss and/or for Summary Judgment (doc. # 17), filed on September 10, 2002, the Buffington Defendants argued that the claims against Sheriffs Shirard and Martin and Deputies Meuer, Buffington, Halper and Rowell should be dismissed based upon their lack of personal participation in the stop and search of Mr. Roth's vehicle or in the arrest of Mr. Roth and Ms. Gumeson.  That lack of personal participation distinguished the Buffington Defendants from the Cortez and Durango Defendants.  It is well-established that "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1007).  Moreover, a person or entity with supervisory authority cannot be held liable on a theory of inadequate training or supervision under § 1983 in the absence of a constitutional violation by the persons supervised.  *See Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1155-56 (10th Cir. 2001) and cases cited therein.  Addressing the allegations advanced by Mr. Mulhern, the Tenth Circuit noted that individuals who "had no direct connection with or participation in the "ruse" checkpoint "were not properly named as defendants in the complaint."  *Id.*  That conclusion would encompass the Buffington Defendants.

14

In view of these well-established precedents and the Tenth Circuit's analysis in this case, I find that Mr. Mulhern should be liable for the reasonable fees and costs incurred by the Buffington Defendants when Plaintiffs' counsel persisted in recklessly pursuing claims against those Defendants in the face of their well-supported motion to dismiss filed on September 10, 2002.

In exercising its discretion under § 1927, the court should focus on ascertaining the fees "reasonably incurred" by the opposing party as a result of counsel's improper conduct. *Gruppo v. FedEx Freight Systems, inc.*, 2008 WL 3211287, *9 (D. Colo. 2008). Section 1927 sanctions are not intended to provide an opposing party with a financial windfall. Calculation of excessive attorneys fees under § 1927 should utilize the traditional "lodestar" methodology, under which the number of hours reasonably expended by counsel are multiplied by a reasonable hourly rate.[8] *Sony Electronics, Inc. v. Soundview Technologies, Inc*., 389 F. Supp. 2d 443, 447 (D. Conn. 2005). The lodestar calculation, however, should not include hours that are duplicative or cumulative. *Godinet v. Management and Training Corp.*, 182 F. Supp. 2d 1108, 1111 (D. Kan. 2002); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 21 F. Supp. 2d 1255, 1260 (D. Kan. 1998) (noting "[t]here is a difference between assistance of co-counsel which is merely comforting or helpful and that which is essential to proper representation"), *rev'd in part on*

---

[8]Mr. Mulhern's Supplemental Response does not challenge the hourly rates asserted by the Moving Defendants, but rather only the hours claimed. Based upon my familiarity with this litigation, as well as fee awards in other cases in the District, I find no reason to decrease the hourly rates claimed by counsel for the Moving Defendants. *See, e.g., Rodriguez v. Zavaras*, 22 F. Supp. 2d 1196, 1202 (D. Colo. 1998) (in civil rights action brought under § 1983, found that hourly rates of $225 and $175 claimed by plaintiff's counsel were commensurate with reasonable hourly rates of other lawyers with similar experience and skill in the Denver legal community); *Hampel v. City and County of Denver*, 886 F. Supp. 760, 761 (D. Colo. 1994) (holding that an hourly rate of $210 for plaintiff's counsel was reasonable in an action brought under Title VII).

*other grounds*, 205 F.3d 1219 (10th Cir. 2000).  *Cf. Alphonzo v. Pitney Bowes, Inc.*, 356 F. Supp.

2d at 460 (noting that an award of fees under § 1927 should not include compensation for

duplicative efforts or time spent in consultation among counsel).

I have carefully reviewed the billing statements attached to the Moving Defendants'

Supplemental Briefs.  Focusing on the pertinent time entries, I noted several entries that

reference time spent conferring with co-defense counsel.  In the typical lodestar case, this court

would be wary of summarily allowing compensation for all time spent in "conferences" with co-

counsel.  Counsel's commitment to collaboration does not override the court's responsibility to

award "reasonable" compensation.  *See, e.g., Foster v. Boise-Cascade, Inc.,* 420 F. Supp. 674,

692 (S.D. Tex. 1976) (after noting the substantial number of hours attributed to telephone

conversations and other communications involving counsel, concluded that "the time spent on . .

. more complex tasks should not be accorded the same weight as the time spent on the

telephone"); *Heavener v. Meyers*, 158 F. Supp. 2d 1278, 1283 (E.D. Okla. 2001) (holding that

time attributed to "discussion" with co-counsel was duplicative and would not be compensated);

*Thornton v. Kaplan*, 958 F. Supp. 507, 511 (D. Colo. 1996) (after noting the "unusually high

amount of time . . . billed for matters itemized as 'telecom' or 'office conferences,'" the court

reduced requested attorneys' fees by 20 percent).

My review of the Moving Defendants' billing statements also found multiple entries

claiming time spent "receiving" or "reviewing" motions or briefs, or even drafts of filings

prepared by a co-defendant.  For example, the Cortez Defendants are claiming $50 for time spent

on April 10, 2003 to "review draft reply brief from Dolores/La Plata Defendants' counsel," and

$10 for time spent on February 5, 2003 "review[ing] Town of Mountain Village Defendants'

Motion to Adopt Montezuma County Defendants' Citation of Additional Authority."  Counsel

for the Buffington Defendants submitted time entries that show on September 18, 2003, two

different individuals claiming $11 to "receive and review Defendant Town of Mountain Village

Substitution of Counsel."  On December 30 and 31, 2003, counsel for the Buffington Defendants

submitted separate time entries of $23 each to "receive . . . motion for sanctions" filed by various

co-defendants.  The Moving Defendants would have Mr. Mulhern pay for their counsels'

consultative efforts, and then also for reviewing the largely duplicative briefs or motions that

resulted from those discussions.  I find nothing in the prevailing case law to suggest that § 1927

sanctions are intended to obviate counsel's obligation to exercise proper billing judgment.  *Cf.*

*Case v. Unified School District No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1250 (10th Cir.

1998) ("[b]illing judgment consists of winnowing the hours actually expended down to the hours

reasonably expended").

Case law addressing the lodestar methodology recognizes that in arriving at a reasonable

fee award, the district court has the discretion either to identify specific hours that are

unreasonable or unnecessary, or simply to reduce the award by an appropriate percentage.  *See*

*Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 789-90

(1989).

> There is no requirement . . . that district courts identify and justify each
> disallowed hour.  Nor is there any requirement that district courts announce which
> hours are permitted for each legal task.  Such a rule would lead to disagreement of
> the most odious sort between court and counsel. . . . And, such a process still
> would not result in a product free of dispute.  To the contrary, disputes would be
> multiplied, violating the Supreme Court's caution that a "request for attorney's
> fees should not result in a second major litigation."  A general reduction of hours
> claimed in order to achieve what the court determines to be a reasonable number
> is not an erroneous method so long as there is sufficient reason for its use.

*Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202-03 (10th Cir. 1986) (reducing the hours claimed by plaintiff's counsel by 77 percent). *Cf. Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 181 (5th Cir. 2007) (upholding a reduction of 12.5 percent for defendants' lack of billing judgment in claiming fees under § 1927); *Vishipco Line v. Charles Schwab & Co.*, 2003 WL 1936142, *3 (S.D.N.Y. 2003) (reducing by ten percent the attorneys fees claimed under § 1927 based upon counsel's vague or excessive time entries). Under the circumstances, I conclude that the attorneys fees claimed by the Moving Defendants should be reduced by ten percent to reflect time entries that are not sufficiently informative or work that cannot be reasonably attributed to Mr. Mulhern's violation of § 1927. After making these deductions, I find that the following fees and costs were reasonably incurred by the Cortez and Durango Defendants (after February 3, 2003) and the Buffington Defendants (after September 10, 2002) as a result of Plaintiffs' counsel's unreasonable and vexatious conduct:

|  | attorneys fees | costs | total |
|---|---|---|---|
| Cortez Defendants | $ 6,202.80 | $ 346.93 | $ 6,549.73 |
| Durango Defendants | $ 6,505.65 | $1,647.34 | $ 8,152.99 |
| Buffington Defendants | $12,402.45 | $1,624.76 | $14,027.21 |

Finally, I note that Mr. Mulhern has argued that any award of sanctions under § 1927 must take into consideration his ability to pay. This argument is contrary to Tenth Circuit precedent. The Tenth Circuit has expressly held that counsel's inability to pay should not be considered in awarding fees under 28 U.S.C. § 1927.

> The statute fits more comfortably with a victim-centered approach, and we would be reluctant to supply a parsimony provision where Congress has not done so.

*Hamilton v. Boise Cascade Express*, 519 F.3d at 1205 ("[W]here the [§ 1927] sanctions were tailored as well as possible to compensate the other party for time lost to [attorney's] antics, we

will not require the court to consider [his] ability to pay.") (quoting *Fox Valley Construction Workers Fringe Benefit Funds v. Pride of Fox Masonry & Expert Restorations,* 140 F.3d 661, 667 (7th Cir. 1998). *Compare Laye v. American Drug Stores, Inc.*, 29 Fed. Appx. 391, 394 (7th Cir. 2002) (suggesting that a court is not required to consider the ability of a party to pay a sanction before one can be imposed under Fed.R.Civ.P. 37). I find no support in the applicable case law for reducing the Moving Defendants' award of fees and costs based upon Mr. Mulhern's financial condition. *See Roth v. Green*, 2008 WL 384522, **2-3 (D. Colo. 2008).

B.     *Plaintiffs' Ability To Pay*

In prior rulings Judge Babcock and the Tenth Circuit have determined that the Cortez Defendants are entitled to recover attorneys fees and costs from Mr. Roth and Ms. Gumeson pursuant to 42 U.S.C. § 1988. On May 12, 2005, the district court directed Mr. Roth and Ms. Gumeson to pay attorney fees in the amount of $12,049. While the Tenth Circuit affirmed that portion of the district court's order taking into account all of the fees incurred by the Cortez Defendants in responding to the three related appeals in this matter, the case was remanded to determine the amount of the fee award in light of Plaintiffs' financial condition. *See Roth v. Green*, 466 F.3d at 1194-95.

Section 1988 provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision of [§ 1983], . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." By allowing a prevailing defendant to recover attorneys fees, Congress sought to deter suits that have no reasonable foundation. *See Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 238 (5th Cir. 1990). In exercising its discretion, "the equities of the situation are to be considered to assure that although the deterrent purpose of

the statute is enforced, a losing party is not subjected to financial ruin." *Rapisardi v. Democratic Party of Cook County,* 583 F. Supp. 539, 542 (D.N. Ill. 1984) (quoting *Colucci v. New York Times Co.*, 533 F. Supp. 1011, 1012-13 (S.D.N.Y. 1982).  *Cf. Eastway Construction Corp. v. City of New York*, 637 F. Supp. 558, 573 (E.D.N.Y. 1986) ("The deterrent effect of an award of attorney's fees of a given sum of money is obviously dependent on the extent of the sanctioned party's resources.  The poorer the offender, the smaller need be the sanction to ensure the desired deterrent effect."), *order modified and remanded*, 821 F.2d 121 (2d. Cir. 1987).  "[A] fee award is permissible as long as it is not 'clearly wholly beyond any present or prospective ability of the losing party to pay." *Scelta v. Delicatessen Support Services, Inc.*, 203 F. Supp. 2d 1328, 1337-38 (M.D. Fla. 2002) (reducing a fee award by 40 percent after finding that plaintiffs' financial resources warranted "a substantial reduction in an award").  Ultimately, the party seeking to reduce an award of attorney's fees "because of limited finances has the burden to plead and establish his or her financial status." *Gibbs v. Clements Food Co.*, 949 F.2d 344, 345 (10th Cir. 1991).

Mr. Roth and Ms. Gumeson have provided affidavits to support their claims of diminished financial capacity.  As of March 4, 2007, both Mr.Roth and Ms. Gumeson were living on fixed monthly incomes.  As a 64 year old retired fruit picker, Mr. Roth received approximately $650 per month from social security and a pension, which Mr. Roth claimed barely covered his monthly expenses.  Ms. Gumeson stated that she was a 64 year old disabled person living on social security benefits of $642 per month.  Ms. Gumeson claimed, without substantiating documentation, that her monthly expenses exceeded her income.  Neither Plaintiff

claimed to own real property or any personal property of significant value.[9] *See* Affidavit of Stephen C. Roth and Affidavit of Jean E. Gumeson attached as Exhibit 2 to Supplemental Response as to Sanctions Against Counsel and the Prevailing Party Award Against His Clients (doc. # 234)

While the court does not have more recent information on Plaintiffs' financial status, it seems reasonable to presume that their conditions have not materially improved since 2007, given their ages, their principal sources of income, and the current state of the economy.  Under the circumstances, I find that an fee award of $12,049 would impose a substantial burden on Plaintiffs that would threaten financial ruin.  Nevertheless, "some award of attorney's fees is necessary to serve as a deterrent and to ensure that future defendants and the courts are not saddled with frivolous and unsubstantiated claims." *Harris v. Superior Court of Arizona*, 2009 WL 775462, **19-20 (D. Ariz. 2009) (reducing by 50 percent the amount of attorneys fees awarded based upon plaintiff's financial hardship).  The deterrent objective underlying § 1988 would not be advanced in this case "by creating an exception for frivolous suits by the impecunious." *Cf. Wolfe v. Perry*, 412 F.3d 707, 723 (6th Cir. 2005) (holding that an award of 25 percent of the attorneys fees claimed by the prevailing defendants was an appropriate amount in light of the plaintiff's overall financial condition).

In this case, the court recommends a fee award of $2,400 assumed equally by the Plaintiffs.  I find this award will allow Defendants to defray some of their litigation expenses

---

[9]While the Durango Defendants served interrogatories on Mr. Mulhern and later a subpoena duces tecum in an effort to obtain information regarding his personal assets, this court is not aware of any similar discovery directed to Mr. Roth's or Ms. Gumeson's financial condition.

while imposing an amount that appears to be within each Plaintiff's means. *Compare Zaklama v. Leanza*, 2005 WL 1657027, *3 (D.N.J. 2005) (reduced an award under § 1988 from $48,770.72 to $20,000 based upon plaintiff's financial status); *Baasch v. Reyer*, 846 F. Supp. 9, 11 (E.D.N.Y. 1994) (reduced an award of attorney's fees from $44,420.33 to $1,000 based upon plaintiff's pro se status and financial condition); *Rapisardi v. Democratic Party of Cook County*, 583 F. Supp. at 543 (reducing an award of attorneys fees from $13,030 to $3,000 based on plaintiff's minimal part time employment).  To further alleviate the financial burden on Plaintiffs, I recommend that each Plaintiff be permitted to pay the required amount of $1,200 in monthly installments of no less than $75.

## CONCLUSION

Accordingly, for the foregoing reasons, I recommend that the district court grant the Moving Defendants' motions for sanctions pursuant to 28 U.S.C. § 1927 and assess the following attorney fees and costs against Robert J. Mulhern:

a. the Cortez Defendants, for attorney fees of $6,202.80 and cost of $346.93 incurred after February 3, 2003;

b. the Durango Defendants, for attorney fees of $6,505.65 and costs of $1,647.34 incurred after February 3, 2003; and

c. the Buffington Defendants, for attorney fees of $12,402.45 and costs of $1,624.76 incurred after September 10, 2002.

I also recommend that Mr. Mulhern be required to pay interest on the foregoing amounts.

I further recommend that Plaintiffs Roth and Gumeson each be required to pay $1,200 in attorneys fees pursuant to 42 U.S.C. § 1988.[10]

---

[10]While all litigants are effected by the competing demands of a congested court docket, I remain mindful that the goal remains a "just, speedy, and inexpensive determination" of every

Dated this 9th day of September, 2009

                                        BY THE COURT:


                                        ___s/Craig B. Shaffer_____
                                        United States Magistrate Judge

---

action.  I have been remiss in meeting that objective in this case and offer my apologies to the
parties.